Johnson, C. J. This was a bill to redeem mortgaged property. The defendant demurred to the bill, which was sustained by the court, and the judgment upon the demurrer is now brought into this court for reversal. The bill charges that the plaintiff borrowed four hundred dollars of the defendant, and that in order to secure the re-payment of said sum of money, he executed to the defendant a bill of sale for a certain negro boy named Peter, by virtue of which he bargained, sold and delivered to the said defendant the said negro boy, aged about twenty-two years, for the consideration of said sum of four hundred dollars, and that the bill of sale contained a condition by which it was provided that if the plaintiff should pay to the defendant the said sum of four hundred dollars so by him borrowed, on or before the 9th day of February 1844, that the said bill of sale should be void. He further charges that he was prevented by accident from attending at the day but that he did attend at .the residence of the defendant some eight or -ten days afterwards, and that he then and there in the presence of witnesses tendered to the defendant the said sum of four hundred dollars and demanded the boy Peter, but that the defendant refused to receive the money and return the boy. He further charges that the boy greatly exceeded in value the sum of four hundred dollars, and that he was worth six or seven hundred dollars. He also charges that the defendant pretended that said bill of sale was absp,T lute and that the transaction was a conditional sale with the privilege of re-purchasing by a certain day, and no,t a pledge py mortgage to secure the re-payment of the money loaned to the plaintiff. He then prays that an account may be taken between himself and the defendant, and that the defendant may be decreed to deliver up said boy and for other and further relief. It is objected that the bill does not show that the bill of sale was delivered to the defendant, and that therefore it never was completed as a deed, We do not conceive that actual delivery in a case like, the present js essential to the validity of the deed. It is very clear that the grantor was much more interested than the grantee in the preservation and execution of the defeasance contained in the bill of sale. Indeed the grantee was, at least, indifferent, and if the boy was really worth more than the sum of money borrowed, he was directly interested in its destruction. When the grantor is equally or more interested in the execution or preservation of the deed than the grantee, the fact of its, being found in his possession does not create any presumption against the idea that delivery was intended at the time of its execution. Scrugham vs. Wood, 15 Wend. The only real question involved in this case is whether the instrument entered into between the parties, is a mortgage or conditional sale. It will be conceded that the instrument, if taken alone and without the aid of extrinsic evidence would amount to a .conditional sale, and the plaintiff having failed to pay the sum stip.-ulated on the day fixed, would have lost his right to re-purchase. But we are not left to adjudicate alone upon the bill of sale, for the defendant having demurred to the bill, has admitted all the facts charged, and consequently we must determine the character of the transaction from the state of case as exhibited by the bill of complaint. In equity the character of the conveyance is determined by the clear and certain intention of the parties. A deed absolute on the face of it and registered as such, will be valid and effectual as a mortgage between the parties, if it were intended by them to be merely a security for a debt, and this would be the case though the defeasance of the agreement rested in parol: for parol evidence is admissible to show that an absolute deed was intended as a mortgage, and that the defeasance has been omitted or destroyed by fraud or ipistake. When it is once ascertained that the convey,ance is to be considered and treated as a mortgage, then all the consequences appertaining in equity to a mortgage are strictly .observed, and the right of redemption is regarded as an inseparable incident. 4 Kent 143, and the cases there cited. This piinciple is peculiar to mortgages and trusts, and so courts of law and equity hold it. It is an elementary principle applicable to these estates, recognized and affirmed by the common law, civil law and equity jurisprudence. It rests upon the principle of policy and a sense of justice and the extrinsic evidence is received, not to qualify or destroy the terms of the deed, but to establish the fact of a loan; and this fact being established makes the deed, which would otherwise have been absolute, a defeasible conveyance. Ring et al. vs. Franklin, 1 Hale R. Courts of equity do not regard the forms of instruments, but they look to th© intent, and give to the acts of the parties that construction, which that intention justifies and requires. The true question is, whether there is still a debt subsisting between ■the parties, capable of being enforced in any way, in rem or in per-sonam. If the transaction resolves itself into a security, whatever be its form, it is in equity a mortgage. 5 A. R.p. 337, Johnson's Ex. vs. Clark. If in this case Byrnside loaned Blakemore four hundred dollars, and he executed the bill of sale merely to secure the payment of the sum borrowed, that debt still subsists and can he enforced in a court of law. If the negro had died, it would not have been the loss of Byrnside, nor would that circumstance have destroyed his right of action for the money. We consider it clear therefore that the negro boy was pledged as a security for the sum borrowed, and that consequently the transaction could amount to nothing more nor less than a mortgage. If we are right in our interpretation of the contract, and that we are, we think there can be no doubt, the decree ought to be reversed. Decree reversed.